IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN U. WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-1552 |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN E. WETZEL, DANIEL BURNS, | ) | |
| ROBIN LEWIS, BRIAN THOMPSON, | ) | United States Magistrate Judge |
| MICHAEL MAHLMEISTER, DEBRA | ) | Cynthia Reed Eddy |
| SAUERS, DENISE BUNNER, WENDY | ) | |
| ROUDA, LT. JOHN MCDONALD, | ) | |
| LINDA PETERSON, SGT. SALES, C.O. | ) | |
| MORRIS, LINDA FOUST, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Plaintiff John U. White, a former inmate of SCI-Mercer, initiated this *pro se* prisoner civil rights action pursuant to 42 U.S.C. § 1983 on November 13, 2014 by filing a motion for leave to proceed *in forma pauperis*, and his complaint was filed on December 9, 2014. (ECF Nos. 1, 3). Thereafter, Plaintiff filed an amended complaint on September 23, 2015, which is the operative pleading herein. (ECF No. 40). The amended complaint does not set forth separate counts; however, it claims violations of the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. All of the thirteen above-captioned Defendants have moved to dismiss the amended complaint in its entirety. (ECF No. 41). Plaintiff has responded to this motion by filing a brief in opposition. (ECF No. 50). The Court has carefully reviewed the amended complaint and the parties' arguments made in connection with the pending motion to dismiss. For the reasons that follow, Defendants' motion to dismiss will be granted in its

entirety.[1]

## II. FACTUAL ALLEGATIONS[2]

In 2012, Plaintiff began serving a sentence of six to twenty-three months at SCI-Mercer. After he had served almost one year of that sentence, in March 2013, Plaintiff received a bed date at a community corrections center for May 2, 2013. Because Plaintiff was paroled and soon to be released to the community corrections center, he began an alcohol and other drug (AOD) treatment program. Prior to finishing the AOD program, he met with Defendant Wendy Rouda, a Unit Manager at SCI-Mercer, on April 3, 2013. Rouda assured Plaintiff that all of his paperwork was in order for his upcoming release and that Plaintiff should just focus on finishing the AOD program. Rouda also told Plaintiff that she would tell Defendant Linda Foust, a correctional counselor at SCI-Mercer, to request Plaintiff's parole papers from Philadelphia County.

Plaintiff completed the AOD program on April 16, 2013. On April 18, 2013, Defendant Foust told Plaintiff that he will no longer be released on May 2, 2013. Foust told Plaintiff that Defendant Linda Peterson, the records clerk at SCI-Mercer, telephoned the Philadelphia County Courthouse and was told by someone there that Plaintiff "still owed them 6 months to satisfy his obligation to the County."[3] Plaintiff told Defendant Foust that the information provided to Defendant Peterson from the individual at the PhilFcadelphia County Courthouse was incorrect.

---

[1] By voluntary consent of the parties, and pursuant to 28 U.S.C. § 636(c)(1), the undersigned has the full authority to conduct any and all proceedings in this matter, including the authority to enter judgment, with direct review by the United States Court of Appeals for the Third Circuit. ECF Nos. 4, 18.

[2] For purposes of resolving the pending motion, the well-pleaded factual allegations in the amended complaint are accepted as true and all reasonable inferences are drawn in a light most favorable to Plaintiff. Phillips v. Cnty of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).

[3] Plaintiff faults Defendant Peterson for making a telephone call to the courthouse instead of sending a request for the parole documents by mail.

According to Plaintiff, his county sentence was to run concurrently with his state sentence such that by April 18, 2013, Plaintiff would have already served about one year towards his county sentence. He showed Foust his paperwork substantiating his position that the information she received was incorrect. However, Foust replied to Plaintiff that "all she knew is what Defendant Peterson told her" and refused to help Plaintiff correct this error. Instead, she told Plaintiff that either he or his family can correct the problem. Plaintiff explained to Foust that his family would be unable to help and that Plaintiff has tried to contact the judge several times via petitions, letters, and motions but had never received a response. Plaintiff told Foust that the only way to get the parole order was through the SCI-Mercer staff. Nevertheless, Foust sternly instructed Plaintiff to handle the matter himself.

Plaintiff then went to speak to Foust's supervisor, Rouda. After Plaintiff apprised Rouda of the situation, Rouda was very disrespectful and told him that neither she nor Foust will do anything to correct the mistake. Like Foust, Rouda told Plaintiff to have his family fix it. Plaintiff then got upset and a confrontation ensued. Plaintiff stated to Rouda and Foust, "isn't part of your job duties to deal with these types of matters?" Plaintiff called Rouda and Foust "lazy and worthless." Plaintiff also yelled to all of the inmates that were present that neither Rouda nor Foust "were worth anything." Rouda responded by stating that the whole situation was frivolous, that she did not care if Plaintiff had to max-out his entire sentence; and that she was not going to "move a muscle to fix the matter."

Because Plaintiff was worked up by the confusion and confrontation with Rouda and Foust, he walked away and spoke with Defendant Morris, a corrections officer (C.O.) at SCI-Mercer. Plaintiff asked C.O. Morris several times to call Dr. Steinberg, the head of the psychology/psychiatry department at SCI-Mercer, because Plaintiff felt like he was about to "flip

out."[4] C.O. Morris instructed Plaintiff to go to his cell and informed Plaintiff that he would call Dr. Steinberg.

About ten minutes later, five C.O.s, led by Defendant Lt. McDonald, came to Plaintiff's cell to ask Plaintiff what happened. Plaintiff showed Lt. McDonald the documents to verify that the information provided by the Philadelphia County Courthouse was wrong. Plaintiff admitted to arguing with Rouda and Foust. Lt. McDonald then told Plaintiff that Rouda had ordered Lt. McDonald to take Plaintiff out of the unit immediately and place him in the restricted housing unit (RHU) because Plaintiff had threatened Rouda. Plaintiff denied making any threats to Rouda. Lt. McDonald acknowledged that he had already spoken to C.O. Morris, who told McDonald that Plaintiff had not threatened anyone. Nevertheless, Lt. McDonald handcuffed Plaintiff and transported him to the RHU, given that Rouda outranked all of the officers that were present. Lt. McDonald told Plaintiff that he believed Plaintiff's version of the events, and thus, stated that Plaintiff could list McDonald as a witness at his upcoming disciplinary hearing.

Later that day, Plaintiff received a written misconduct involving the incident with Rouda and Foust. Plaintiff wrote down his version of the events and completed a witness form. Plaintiff gave both of these documents to Defendant Sgt. Sales, who assured Plaintiff they would be properly submitted for Plaintiff's disciplinary hearing on April 24, 2013. The hearing examiner at Plaintiff's disciplinary hearing was Defendant Bunner. Plaintiff told Defendant Bunner his version of the events. When he finished, Plaintiff asked where his witnesses were. Bunner responded that Plaintiff never submitted his witness form. Plaintiff told Bunner that Sgt. Sales was supposed to submit it. Bunner stated that Plaintiff should "take the matter up with" Sgt. Sales, and denied Plaintiff's request to call his desired witnesses even though they all were

---

[4] Plaintiff states that he and Dr. Steinberg had an agreement that whenever Plaintiff had anxiety or overwhelming feelings, he was to notify the staff immediately to set up a meeting with Dr. Steinberg.

either staff or inmates at the jail. Plaintiff was found guilty on the misconduct and Bunner sanctioned Plaintiff to 60 days in the RHU. This finding of guilt on the misconduct operated to disqualify Plaintiff from his upcoming release to the community corrections center.

Plaintiff immediately began the appeals process after his disciplinary hearing. Plaintiff's appeal was initially denied by Defendant Debra Sauers. On June 7, 2013, Plaintiff sent a detailed letter to the DOC's Office of Special Intelligence and Investigation (OSII) requesting that Rouda and the staff at SCI-Mercer be investigated for their unethical conduct. On June 21, 2013, Plaintiff sent a request to Defendant Brian Thompson, the Superintendent at SCI-Mercer, asking for assistance in resolving the issue. Plaintiff wrote that his family was outraged and that they were in the process of seeking an attorney but that Plaintiff would like to try to resolve it "in house" first. Superintendent Thompson responded by telling Plaintiff to contact his attorney.

On July 3, 2013, Lt. McDonald sent Plaintiff a written statement which said that Plaintiff was not guilty on the underlying misconduct based on the information provided by C.O. Morris, who was an eye witness to the whole incident.

On July 30, 2013, Plaintiff wrote another letter to the OSII complaining of and attaching Superintendent Thompson's response to Plaintiff's June 21 request. Plaintiff also advised the OSII of an alleged conversation that Plaintiff had with Superintendent Thompson wherein Thompson stated that "whatever [my] staff puts into a report, 10 out [of] 10 times, [I am] going to go with what is in that report." Plaintiff also reported that Thompson told Plaintiff that he would not investigate anything because he did not have time. When Plaintiff told Superintendent Thompson that he would report the matter to the central office of the OSII and that they would investigate, Thompson responded by saying that he did not care about the central office and walked away.

On August 13, 2013, Plaintiff spoke with Defendant Michael Mahlmeister, a Deputy Superintendent Facility Manager at SCI-Mercer. Mahlmeister asked Plaintiff if he reported his conversation with Superintendent Thompson to the central office, to which Plaintiff responded in the affirmative. Mahlmeister then told Plaintiff that Superintendent Thompson was "chewed out" by the central office. Plaintiff stated that it was not his intention to get Superintendent Thompson into trouble and that he only wished to have his name cleared so that he could regain his parole. Mahlmeister told Plaintiff that he would set up a meeting with all of the parties involved to find a solution to the matter. To that end, Mahlmeister advised Plaintiff to send a request to Mahlmeister asking that such a meeting be arranged, which Plaintiff did later that day. On August 22, 2013, Plaintiff sent Mahlmeister another request to have a meeting because he never received a response on the first request.

On August 26, 2013, Plaintiff received a response from the central office of OSII telling him that their office would take no further action in the matter and referred the issue back to Superintendent Thompson. Plaintiff then wrote a detailed letter to Defendant John Wetzel, the Secretary of the Pennsylvania Department of Corrections, in early September 2013. Plaintiff requested in this letter that Defendant Wetzel personally come to SCI-Mercer to correct the matter. Plaintiff received a response on this letter on October 7, 2013 from Defendant Daniel Burns, the Deputy Secretary of the Western Region, who stated that Wetzel had forwarded Plaintiff's letter to Burns. Burns wrote that he had his assistant contact Lt. McDonald to verify the statement that Plaintiff was not guilty of the misconduct. Lt. McDonald allegedly confirmed Plaintiff's version of the events to Burns' assistant. Burns therefore ordered that Plaintiff be given a remanded disciplinary hearing on the matter.

On October 10, 2013, Plaintiff sent a third request to Defendant Mahlmeister asking for a

meeting to be arranged, as Mahlmeister had previously promised, but Plaintiff never received a response. On October 24, 2013, Plaintiff was reissued the misconduct from April 18, 2013 and was scheduled to have a remanded disciplinary hearing on October 30, 2013. In advance of the remanded disciplinary hearing, Plaintiff completed a witness form requesting that Defendants Lt. McDonald, C.O. Morris, and non-Defendant Sgt. Arkwright be called as witnesses. Defendant Bunner was once again the hearing examiner. She continued the hearing until November 6, 2013 so that she could obtain statements from Plaintiff's witnesses. Plaintiff asked her why she did not continue the April disciplinary hearing to get these statements but she did not respond.

At the hearing on November 6, 2013, all of Plaintiff's listed witnesses changed their stories "from what was truthful and correct to a huge lie." Plaintiff attempted to explain to Bunner why the newer, modified statements were unreliable. However, Bunner stated that she was admitting them into evidence and voiding out the prior ones. Bunner found Plaintiff guilty on the reissued misconduct, and the following day, November 7, 2013, Plaintiff began the appeals process.

His initial appeal was again denied, even though he attached a copy of the original statements. On November 8, 2013, Plaintiff wrote a detailed letter to Burns telling him what happened at his remanded disciplinary hearing. On December 2, 2013, Plaintiff submitted his second-level appeal to Superintendent Thompson, which was also denied. Plaintiff sent Burns another letter on December 2, 2013 asking him to personally come to SCI-Mercer to straighten out the situation, or send someone with authority to come investigate so that the misconduct could be removed off of Plaintiff's record. Burns responded on December 10, 2013 by stating that Plaintiff had to go through the appropriate appeals process by submitting the same evidence that Plaintiff submitted via letter to Burns. Burns noted, however, that nothing guarantees a

7

specific outcome. Plaintiff appealed his finding of guilt to the third and final level to Defendant Robin Lewis, the DOC's chief hearing examiner, who denied his appeal.

In September and October 2014, Plaintiff sent two detailed letters to Secretary Wetzel and one detailed letter to Burns. These letters requested that they investigate and correct the falsified misconduct, however, neither Wetzel nor Burns ever responded.

## III. STANDARD OF REVIEW

### A. *Pro Se* Pleadings

*Pro se* pleadings are held to a less stringent standard than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106(1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). As such, a *pro se* complaint pursuant to 42 U.S.C. § 1983 must be construed liberally, Hunterson v. DiSabato, 308 F.3d 236, 243 (3d Cir. 2002), so "as to do substantial justice." Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citations omitted). In other words, if the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim. See, e.g., Taylor v. Books A Million, Inc., 296 F.3d 376, 378, (5th Cir. 2002). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### B. Rule 12(b)(6) Motions

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. Twombly, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 583 (quoting Scheuer v. Rhoads, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

IV. **DISCUSSION**

    A. **Official Capacity Claims & Mootness**

Defendants initially contend that to the extent that the amended complaint asserts claims for monetary damages against them in their official capacity, such claims should be dismissed because they enjoy immunity under the Eleventh Amendment of the United States Constitution.

In his brief in opposition, Plaintiff attempts to clarify his claims against the Individual Defendants. He states that his claims for monetary damages against these individual Defendants are being asserted against Defendants in their individual capacity. See Wilson v. Pennsylvania, 2015 Wl 1186004, *11 (W.D.Pa. 2015) ("The Eleventh Amendment does not, however, bar claims for damages against state officials acting in their individual capacities."). He states that his official capacity claims against Defendants only involve his request for declaratory and injunctive relief so that Defendants "will be stopped form violating anyone else's rights in the manner this plaintiff was violated."

"While it is true that Eleventh Amendment immunity does not apply to claims for injunctive relief against state officials to enjoin conduct alleged to be an ongoing violation of federal law or the Constitution, see Ex Parte Younge, 209 U.S. 123, 129, 28 S. Ct. 441, 52 L.Ed. 714, (1908), such claims must be based on an ongoing violation, rather than past conduct." Beale v. Wetzel, 2015 WL 2449622, *5 (W.D.Pa. 2015); see also Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n. 10 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.") (citations omitted). When Plaintiff initiated this action, he was confined at SCI-Mercer and was seeking injunctive and declaratory relief of an alleged ongoing violation. However, Plaintiff has since been released from SCI-Mercer. See (ECF Nos. 53, 54, 55).

"In general, an inmate's claim for injunctive and declaratory relief becomes moot on his release from prison." Cobb v. Yost, 342 Fed. App'x 858, 859 (3d Cir. 2009); see also Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) ("An inmate's transfer from the facility complained

of generally moots the equitable and declaratory claims.").[5] Accordingly, all of Plaintiff's claims in the amended complaint against Defendants in their official capacity for injunctive and declaratory relief are moot by virtue of his release from SCI-Mercer, and he does not have standing under Article III of the Constitution to assert such claims on behalf of other inmates at SCI-Mercer.

### B. Section 1983 Generally – Personal Involvement

To state a viable § 1983 claim, the plaintiff must sufficiently plead that (1) the conduct complained of was committed by a person acting under the color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Twp of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995). "In order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." Estate of Smith v. Marasco, 430 F.3d 140, 151 (3d Cir. 2005). "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis in original). Therefore, "[t]he mere fact that a defendant is in a supervisory position is insufficient to establish liability under Section 1983." Mearin v. Swartz, 951 F.Supp.2d 776, 782 (W.D.Pa. 2013).

To the extent that a plaintiff's allegations against a prison official only involve the prison official reviewing the plaintiff's grievances or appeals from disciplinary proceedings, "[s]uch involvement is insufficient as a matter of law to render those defendants liable," given that "the

---

[5] Plaintiff's claims for injunctive and declaratory relief do not fit within the "narrow exception," which depends on whether "his case presents a question 'capable of repetition yet evading review.'" Cobb, 342 Fed. App'x at 859 (quoting Abdul-Akbar v. Watson, 4 F.3d 195, 206 (3d Cir. 1993)). "Speculation that [Plaintiff] could return to prison does not overcome the mootness doctrine." Id.

11

failure of a prison official to act favorably on an inmate's grievance [or misconduct] is not itself a constitutional violation." Lewis v. Wetzel, — F.Supp.3d —, 2015 WL 9268432, *12 (M.D. Pa. Dec. 21, 2015) (collecting cases); Alexander v. Fritch, 2010 WL 1257709, *15-16 (W.D.Pa. 2010); Mincy v. Chmielswski, 508 Fed. App'x 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Therefore, Plaintiff's claims against several of the Defendants are appropriately dismissed for lack of personal involvement.

Defendants assert that Defendants Wetzel, Burns, Lewis, Thompson, Mahlmeister, and Sauers are entitled to be dismissed from this action for lack of personal involvement. Defendants assert that the allegations in the amended complaint pertaining to these individuals are based either on their supervisory positions as officers of the Commonwealth or based on their role in responding—or failing to investigate—Plaintiff's complaints and appeals relating to the alleged falsified misconduct from Rouda in April 2013. The Court agrees with Defendants, and therefore, holds that Defendants Wetzel, Burns, Lewis, Thompson, Mahlmeister, and Sauers are dismissed from this case because the amended complaint does not allege that any of these Defendants were personally involved in the alleged deprivation of his constitutional rights. See Mutschler v. Tritt, 2015 WL 4403609, *3 (M.D.Pa. 2015) ("Because there are no allegations that [the defendants] were involved in the underlying events that took place, they cannot be held accountable due to their failure to overturn the Hearing Examiner's findings on appeal."); Mearin, 951 F.Supp.2d at 782 (the inmate-plaintiff's allegations that the defendant was "responsible for interviewing prisoners and investigating their grievances and complaints" were insufficient to confer knowledge of, and acquiescence to, a constitutional violation).

### C. First Amendment Claims

#### 1. *Denial of Access to the Courts*

The amended complaint asserts that Defendants Rouda, Foust, and Peterson are liable for violating Plaintiff's First Amendment right of access to the courts when they refused to help Plaintiff get his parole order from the Philadelphia County Courthouse in March 2013. Under the First Amendment, prisoners have a right of access to the courts. Lewis v. Casey, 518 U.S. 346 (1996). "However, prisoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). Plaintiff's allegations here do not fit within either category. Plaintiff was not challenging his underlying sentence nor was he attempting to bring a conditions of confinement claim when this incident occurred. Further, there are no allegations whatsoever that Rouda, Foust, or Peterson prevented him from personally contacting the Philadelphia County Courthouse. In fact, they instructed him to do just that. While his frustration with their refusal to help him obtain his parole order is understandable, the fact remains that said refusal was not a constitutional violation of his First Amendment right to access to the courts.

#### 2. *Retaliation*

Defendants also move to dismiss Plaintiff's First Amendment retaliation claim, arguing that the amended complaint fails to allege that Plaintiff engaged in protected conduct. In order to set forth a *prima facie* claim for First Amendment retaliation, the plaintiff must allege (1) that he was engaged in constitutionally protected conduct, (2) that prison officials caused him to suffer an adverse action, and (3) that his constitutionally protected conduct was a substantial or motivating factor in the officials' decision to discipline him. Rauser v. Horn, 241 F.3d 330, 333

(3d Cir. 2001). Whether an individual has engaged in protected conduct is a question of law. See Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (in the context of an employee's § 1983 First Amendment retaliation claim).

The amended complaint is simply bereft of any allegations that Plaintiff engaged in any form of constitutionally protected speech or conduct prior to being issued the misconduct. The amended complaint identifies three statements that Plaintiff made when he was arguing with Rouda and Foust: (1) "isn't part of your job duties to deal with these types of matters?"; (2) you are "lazy and worthless"; and (3) stating to inmates in the vicinity that Rouda and Foust "were [not] worth anything." Regardless of whether Rouda in fact felt threatened from these comments, which Plaintiff adamantly disputes, this speech by Plaintiff is not constitutionally protected. See Torres v. Clark, 522 Fed. App'x 103, 105-06 (3d Cir. 2013) (an inmate-plaintiff who made statements about a corrections officer which constituted, *inter alia*, "inappropriate language" did not engage in constitutionally protected conduct, and thus, the misconduct issued did not violate the First Amendment); Brown v. Hannah, 850 F.Supp.2d 471, 479 (M.D.Pa. 2012) ("[Plaintiff's] retaliation claim fails the first prong, however, because he does not establish any basis to show that he had a constitutionally protected right, in the prison setting, to use inappropriate, disrespectful and derogatory language to [the prison official]."). The amended complaint contains no other allegations that Plaintiff was retaliated against by any of the Defendants for subsequently appealing from the disciplinary proceedings or sending out letters to the Defendants or OSII complaining of the alleged falsified misconduct. Therefore, Plaintiff's First Amendment retaliation claim fails as a matter of law.

### D. Fourth Amendment Claim

The amended complaint states no viable claim under the Fourth Amendment. Plaintiff

claims that a Fourth Amendment violation occurred when Lt. McDonald handcuffed him and transported him to the RHU in accordance with Rouda's order even though McDonald knew that Plaintiff did not threaten Rouda. The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. CONST. amend. IV. Plaintiff does not complain that an illegal search of his person occurred; rather, this claim is based solely on his theory that an illegal seizure of his person occurred when he placed in the RHU on the false misconduct. Notably, however, Plaintiff does not allege that any excessive force was used during this incident. Moreover, an inmate's Fourth Amendment rights and expectation of privacy are diminished in the prison context, see Hudson v. Palmer, 468 U.S. 517, 525-26 (1986), and an inmate does not have an expectation that he will not be placed in restrictive custody when a misconduct charge is issued against him. See Fantone v. Latini, 780 F.3d 184, 185-86 (3d Cir. 2015). Because the amended complaint simply pleads no facts suggesting that any of the Defendants, including McDonald and Rouda, violated his Fourth Amendment rights, this claim will be dismissed.

  E. **Eighth Amendment Claim**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. "The Supreme Court has interpreted this prohibition both to bar prison officials from using excessive force against inmates, … and to impose affirmative duties on prison officials to 'provide humane conditions of confinement.'" Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (citing Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) and Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The amended complaint contains no allegations that Plaintiff was subjected to any form of excessive force during the relevant time period. Accordingly, the Court will assume that Plaintiff is pursuing a claim relating to his conditions of

15

confinement under the Eighth Amendment, especially in light of the numerous general assertions in the amended complaint that the individual Defendants exhibited deliberate indifference.

The Eighth Amendment requires that prison officials provide humane conditions of confinement; ensure that inmates receive adequate food, clothing, shelter, and medical care; and take reasonable measures to guarantee the safety of inmates. Farmer, 511 U.S. at 832. "Claims concerning conditions of confinement require a plaintiff to show that the prison conditions posed a substantial risk of serious harm and that the prison officials were deliberately indifferent to that risk." Young, 801 F.3d at 177 (internal marks and alterations omitted). The Court agrees with Defendants that the amended complaint does not connect Plaintiff's numerous, bare allegations of "deliberate indifference" to any conditions that posed a substantial risk of serious harm to Plaintiff. The thrust of Plaintiff's complaint is that when he was nearing an early release on parole, he was issued and found guilty on a falsified misconduct, which disqualified him from being released to the community corrections center. These allegations have nothing to do with his conditions of confinement during his time at SCI-Mercer. Therefore, Plaintiff's claim under the Eighth Amendment fails as a matter of law, and it is appropriately dismissed.[6]

### F. Fourteenth Amendment Claim

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "A protected liberty interest may arise from only one of two sources: the Due Process Clause or the laws of a

---

[6] The Court notes that in his brief in opposition, Plaintiff avers that he "suffers from bi-polar disorder, P.T.S.D, and sometimes has severe boughts [*sic*] of depression," and that Defendants were aware of these medical issues. (ECF No. 50 at 3, ¶ C.). Plaintiff questions "how could the defendants state that plaintiff did not state an 8th amendment claim when he experienced all these things, on top of dealing with his mental condition." (Id. at ¶ D.). However, because his claim is in no way based on his medical care or any other conditions of confinement associated with these medical issues or otherwise, even if the Court were to consider these extraneous factual allegations, dismissal of this claim is still appropriate. As such, allowing amendment here would be futile.

state." Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999). "A prisoner facing the loss of a legally cognizable liberty interest following disciplinary proceedings has a due process right to certain procedural protections." Barna v. Boyce, 563 Fed. App'x 103, 104 (3d Cir. 2014) (citing Wolff v. McDonnell, 418 U.S. 539, 566-67 (1974)). This claim is subject to dismissal because Plaintiff identifies no such cognizable liberty interest.

Where state law provides parole authorities complete discretion to rescind a grant of parole prior to an inmate's release, the inmate does not have a constitutionally protected liberty interest in being paroled before his actual release. Fantone v. Latini, 780 F.3d 184, 190 (3d Cir. 2015) (citing Jago v. Van Curen, 454 U.S. 14 (1981)). In Pennsylvania, "the Parole Board may at any time rescind an order granting parole until it is 'executed'—i.e., the inmate is released on parole." Id. (quoting Johnson v. Cmwlth Pa. Bd. of Prob. & Parole, 532 A.2d 50, 52 (Pa. Cmwlth. 1987)). Moreover, the combination of the rescission of an inmate's parole together with time his time spent in the RHU on a false misconduct does not implicate a protected liberty interest. Id.

In his brief in opposition, Plaintiff states that he is not asserting that the actual falsification of the misconduct was a violation of his due process rights. Rather, he contends that the amended complaint alleges three separate violations of his due process rights after he was issued the falsified misconduct: (1) when Sgt. Sales did not submit the witness form prior to Plaintiff's first misconduct hearing; (2) when the hearing examiner, Bunner, refused to call his witnesses at the first hearing even though they were available to testify; and (3) when Bunner refused to admit a written statement into evidence on Plaintiff's behalf at the second remanded disciplinary hearing. However, because Plaintiff has failed to identify a protected liberty interest, these alleged procedural errors at his disciplinary hearings on the falsified charge do not

17

state a claim under the Due Process Clause of the Fourteenth Amendment. See Gay v. Shannon, 211 Fed. App'x 113, 116 (3d Cir. 2006).

The sanction of 60 days in the RHU in connection with this misconduct did not, by itself, implicate a protected liberty interest. See, e.g., Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002 (sanction of seven months in disciplinary custody did not, on its own, violate a protected liberty interest). Additionally, the amended complaint does not allege any other facts supporting the conclusion that Plaintiff was subjected to an "atypical and significant hardship in relation to the ordinary incidents of prison life" during his time in the RHU. See Sandin v. Conner, 515 U.S. 472, 486 (1995); Barna, 563 Fed. App'x at 104. Therefore, he has failed to adequately allege that his rights under the Due Process Clause of the Fourteenth Amendment were violated. See Brown v. Hannah, 850 F.Supp.2d 471, 478 (M.D.Pa. 2012) (dismissing the plaintiff's claims that his procedural due process rights were violated when he was issued a falsified misconduct report and the hearing examiner denied a requested witness and the opportunity to cross-examine the accuser, and sanctioned him to 60 days in disciplinary confinement).

### G.    Amendment would be Futile

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors., Inc., 482 F.3d 247, 251 (3d Cir. 2007). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Smith v. Fauver, 213 F.3d 117, 115 (3d Cir. 2000). Allowing Plaintiff to file a second amended complaint in this case would be futile, as it would continue to fail to state a claim. All of Plaintiff's claims are deficient as a matter of law and there are no additional facts which he could plead that would cure the deficiencies. Thus, the

Court will not allow Plaintiff to file a second amended complaint.

## V. CONCLUSION

In accordance with the foregoing, Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be granted in its entirety, and the amended complaint will be dismissed with prejudice. An appropriate Order follows.

Dated: <u>June 9, 2016.</u>

                                        By the Court:

                                        <u>s/ Cynthia Reed Eddy</u>
                                        Cynthia Reed Eddy
                                        United States Magistrate Judge

cc: **JOHN U. WHITE**
     260 Southampton Rd.
     Philadelphia, PA 19116

     **SCOTT A. BRADLEY**
     (electronic notification via CM-ECF)